## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RONNIE LEE LEAK, JR.        )
                               )
                Plaintiff,    )
                               )
                v.           )        1:17CV289
                               )
NANCY A. BERRYHILL,         )
Acting Commissioner of Social    )
Security,                  )
                               )
                Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Ronnie Lee Leak, Jr., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Brief); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 174-79.) Upon denial of that application initially (Tr. 73-88, 111-14) and on reconsideration (Tr. 89-110, 118-22), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 125-27). Plaintiff, his

attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-72.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 12-29.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 7-11, 271-75), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] has not engaged in substantial gainful activity since November 7, 2011, the application date.

. . .

2.   [Plaintiff] has the following severe impairments: a major depressive disorder; a cognitive disorder, NOS; and post-traumatic stress disorder (PTSD).

. . .

3.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4.   . . . [Plaintiff] has the residual functional capacity to perform work at the medium exertional level. He can perform goal-oriented rather than production-oriented work (e.g., the performance of work tasks in allotted time is more important tha[n] the pace at which the work tasks are performed).  He can understand, remember, and perform work tasks at [General Educational Development ('GED')] Reasoning Level 02 (as defined in the Dictionary of Occupational Titles (DOT).  He can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties).  He can have occasional contact with the general public that is inconsequential or superficial (i.e., no sustained

conversations, e.g., ticket taker). He can have frequent contact with supervisors and coworkers.[FN]

[FN] Work at the medium exertional level is defined as having the capacity to lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; stand or walk 6 hours in an 8 hour workday; and sit 6 hours in an 8 hour workday. Work at GED Reasoning Level 02 is defined as applying commonsense understanding to carry out detailed but uninvolved written or oral instructions, and dealing with problems involving a few concrete variables in or from standardized situations.

. . .

5. [Plaintiff] has no past relevant work.

. . .

9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since November 7, 2011, the date the application was filed.

(Tr. 17-28 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

---

[1] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u>

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of
(continued...)

<u>**B.  Assignments of Error**</u>

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to properly evaluate the paragraph A criteria of [L]isting 12.02 as applicable at the time of the decision" (Docket Entry 12 at 5 (bold font omitted));

2) "[t]he ALJ failed to properly evaluate the opinions of two consulting psychologists in assessing the paragraph B criteria of Listing 12.02" (<u>id.</u> at 14 (bold font omitted)); and

3) "[t]he ALJ did not properly evaluate [Plaintiff's] credibility" (<u>id.</u> at 19 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 14 at 1-18.)

## 1. Listing 12.02[5]

Plaintiff contends that the ALJ erred by "fail[ing] to properly evaluate the paragraph A criteria of [L]isting 12.02 as applicable at the time of decision."  (Docket Entry 12 at 5 (bold font omitted)).  According to Plaintiff, he presented "evidence which shows that he satisfied the introductory paragraph and

---

[4] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[5] Because Plaintiff's first and second issues on review both allege errors regarding the ALJ's evaluation of Listing 12.02 (<u>see</u> Docket Entry 12 at 5-19), this Recommendation will discuss those assignments of error together.

paragraph A criteria of Listing 12.02" (id. at 9; see also id. at 9-14 (discussing evidence allegedly showing that Plaintiff's symptoms satisfied criteria of paragraphs A.2. and A.5.)), but that the ALJ "failed to mention either . . . paragraph . . . [and] did not . . . compare each of the paragraph A criteria to the evidence of [Plaintiff's] symptoms" (id. at 6). In addition, Plaintiff maintains that "[t]he ALJ failed to properly evaluate the opinions of two consulting psychologists in assessing the paragraph B criteria of Listing 12.02." (Id. at 14.) In particular, Plaintiff asserts that "[t]he ALJ's findings that [Plaintiff] had moderate difficulties in social functioning and concentration, persistence or pace [('CPP')] are not supported by substantial evidence," because "[t]he ALJ failed to evaluate the opinions of [consultative psychological examiners Dr. Joseph P. Appollo and Dr. E.J. Burgess] in assessing the degree of limitation" in those areas of functioning. (Id. (referencing Tr. 19).) Plaintiff's contentions fall short.

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR [P]t.

404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify.").

To meet Listing 12.02, Plaintiff must satisfy either the criteria in paragraphs A and B, or the criteria in paragraph C, see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.02. Paragraph A requires:

> Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> > 1. Disorientation to time and place; or
> >
> > 2. Memory impairment, either short-term . . ., intermediate, or long-term . . .; or
> >
> > 3. Perceptual or thinking disturbances . . .; or
> >
> > 4. Change in personality; or
> >
> > 5. Disturbance in mood; or

6. Emotional lability . . . and impairment in
impulse control; or

7. Loss of measured intellectual ability of at
least 15 I.Q. points from premorbid levels or
overall impairment index clearly within the
severely impaired range on neuro-psychological
testing . . .[.]

Id., § 12.02A.

Here, although Plaintiff correctly asserts that the ALJ did
not expressly discuss the paragraph A criteria of Listing 12.02
(see Docket Entry 12 at 6; see also Tr. 18-19), Plaintiff has
failed to show how this omission prejudiced him, see Fisher v.
Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o
principle of administrative law or common sense requires us to
remand a case in quest of a perfect opinion unless there is reason
to believe that the remand might lead to a different result"). The
ALJ apparently assumed without express analysis that Plaintiff's
cognitive disorder met Listing 12.02's paragraph A criteria, and
proceeded to analyze whether Plaintiff could meet the requirements
of paragraphs B and C of Listing 12.02, ultimately concluding that
he could not do so. (See Tr. 18-19.) Moreover, Plaintiff has not
challenged the ALJ's determination that Plaintiff's mental symptoms
failed to satisfy the paragraph C criteria of Listing 12.02, (see
Docket Entry 12 at 5-19; see also Tr. 19) and, thus, the relevant
inquiry focuses on whether substantial evidence supports the ALJ's
findings with respect to the paragraph B criteria of Listing 12.02.

Paragraph B of Listing 12.02 requires proof that the condition documented via Paragraph A,

> result[ed] in at least <u>two</u> of the following:
>
>> 1. <u>Marked</u> restriction of activities of daily living; or
>>
>> 2. <u>Marked</u> difficulties in maintaining social functioning; or
>>
>> 3. <u>Marked</u> difficulties in maintaining [CPP]; or
>>
>> 4. <u>Repeated</u> episodes of decompensation, each of extended duration[.]

<u>Id.</u>, § 12.02B (emphasis added). In this context, to qualify as "marked," a limitation must "interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." <u>Id.</u>, § 12.00(C); <u>see also</u> 20 C.F.R. § 416.920a(c)(4) (explaining that "marked" represents the fourth-highest of five levels, below "extreme," but above "none, mild, [and] moderate"). The ALJ here found that Plaintiff's mental symptoms caused mild limitation in activities of daily living, moderate limitation in social functioning, moderate limitation in CPP, and no episodes of decompensation. (<u>See</u> Tr. 18-19.) Plaintiff has challenged only the findings as to social functioning and CPP. (<u>See</u> Docket Entry 12 at 14-19.)

a. <u>Social Functioning</u>

Plaintiff faults the ALJ's evaluation of Plaintiff's social functioning in three respects: the ALJ (1) "neither mention[ed] nor

evaluate[d] the opinions of . . . consulting psychologists [Drs. Appollo and Burgess] in determining the degree of [Plaintiff's] limitation"; (2) "failed to explain how having a few family friends ha[d] any bearing on social functioning"; and (3) erroneously stated that Plaintiff "reported attending church at least three times a week." (Docket Entry 12 at 15.) None of those contentions warrants relief.

The ALJ analyzed Plaintiff's ability in social functioning as follows:

> [Plaintiff] initially reported that he has no friends or hobbies; he does not generally socialize; and, he does not like large crowds. However, he later reported attending church at least three times a week; and having a few family friends. Nonetheless, the record shows that [Plaintiff's] mental impairments do not significantly interfere with his capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.

(Tr. 19 (internal citation omitted) (emphasis added).)

Plaintiff first argues that the ALJ erred by failing to evaluate the opinions of Drs. Appollo and Burgess as part of his step three determination of Plaintiff's ability to function socially. (Docket Entry 12 at 15.) Although the ALJ did not expressly discuss those opinions at step three (see Tr. 18-19), he both discussed and weighed those opinions in conjunction with his formulation of the RFC (see Tr. 22-24, 25). That discussion permits the Court to trace the path of the ALJ's reasoning with regards to his step three findings. See McCartney v. Apfel, 28 F.

App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).

With regard to Dr. Burgess in particular, Plaintiff contends that "the ALJ apparently gave significant weight to Dr. Burgess's opinion that [Plaintiff] would not relate well to fellow workers since the only opinion to which he assigned little weight was Dr. Burgess's opinion regarding [Plaintiff's ability to tolerate] stress." (Id. at 16 (referencing Tr. 25, 352).) According to Plaintiff, the ALJ's crediting of "Dr. Burgess's opinion that [Plaintiff] would not relate well to fellow workers contradicts the ALJ's finding that [Plaintiff] could interact appropriately and on a sustained basis with other individuals." (Id. at 16-17 (referencing Tr. 19).)[6]

---

[6] Plaintiff also attacks the ALJ's discounting of Dr. Burgess's opinion concerning Plaintiff's ability to tolerate work stress on the grounds that "stress 'varies from person to person and thus needs to be accounted for individually.'" (Docket Entry 12 at 16 (quoting Tr. 25, and referencing Tr. 351).) Plaintiff deems the ALJ's rationale "illogical," because, "[i]f the ALJ were correct, no opinion from any medical source regarding stress would be entitled to any weight." (Id.) However, Plaintiff neither explains how the ALJ's assignment of little weight to Dr. Burgess's opinion regarding work stress
(continued...)

14

As an initial matter, the ALJ did not find, without qualification, that Plaintiff "could interact appropriately and on a sustained basis with other individuals," as Plaintiff alleges. (Id.) Rather, the ALJ found that Plaintiff's "mental impairments do not <u>significantly</u> interfere with his capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals" (Tr. 19 (emphasis added)), thus indicating that Plaintiff's mental symptoms caused some, but less than significant, limitation on his ability to function socially.

More importantly, however, the ALJ's finding of moderate limitation in social functioning does not necessarily contradict Dr. Burgess's opinion that Plaintiff would not relate <u>well</u> with others. An opinion that someone cannot relate <u>well</u> with others does not equate to a statement that the individual entirely lacks the ability to interact socially. Rather, such an opinion reflects that the individual experiences some degree of difficulty in the ability to function socially. The ALJ captured Plaintiff's difficulty in social functioning by finding him moderately limited in that area (see Tr. 19), and by incorporating restrictions to only occasional, superficial contact with the public and frequent

---

[6] (...continued)
rendered the ALJ's analysis of Plaintiff's <u>social functioning</u> unsupported by substantial evidence, nor why the ALJ's preclusion of production-oriented work and limitation to routine tasks at Reasoning Development Level 2 in the mental RFC (see Tr. 20) would not account for Plaintiff's difficulty in tolerating work stress. (See Docket Entry 12 at 16.)

interaction with supervisors and coworkers in the mental RFC (see Tr. 20).

Plaintiff additionally faults the ALJ for according only partial weight to the opinions of Dr. Appollo that Plaintiff had "'very limited ability to relate to others'" and "'significant problems with the ability to verbally communicate'" for two reasons. (Docket Entry 12 at 15 (referencing Tr. 25, and quoting Tr. 339).) First, Plaintiff notes that "[t]he ALJ never identified the particular 'treatment records' or particular observations Dr. Appollo made that the ALJ believed contradicted Dr. Appollo's opinions." (Id. at 17.) Although the ALJ did not explain which of the "treatment records" or Dr. Appollo's "clinical observations" the ALJ felt did not support Dr. Appollo's opinions in the same paragraph in which the ALJ assigned those opinions partial weight (see Tr. 25), the ALJ's discussion of Plaintiff's mental health treatment earlier in the decision provides support for the ALJ's rationale for discounting Dr. Appollo's opinions. See McCartney, 28 F. App'x at 279-80; Kiernan, 2013 WL 2323125, at *5.

For example, the ALJ noted that:

- While Plaintiff remained covered by Medicaid, he did not pursue specialized mental health treatment, and mental status examinations performed by general treatment providers reflected normal findings (Tr. 22);

- Plaintiff began receiving mental health treatment in March 2014, and, by October 2014, mental status examinations demonstrated a reactive and appropriate affect, as well as linear and goal-

directed thoughts without flight of ideas of loose associations (Tr. 24);

- Once Plaintiff began taking medication and attending group therapy, he gained insight and coping skills and his symptoms improved (id.);

- Dr. Appollo noted in his first consultative examination that Plaintiff remained cooperative, appeared neatly dressed with good hygiene, maintained an emotional expression appropriate to thought content, and demonstrated coherent and clear thought processes and adequate insight and judgment (Tr. 22); and

- At Dr. Appollo's second examination, he observed that Plaintiff displayed a good and cooperative attitude, appeared neatly dressed, demonstrated relevant and coherent thought processes without evidence of language impairment and expressions appropriate to thought content and situation, and evidenced intact judgment and insight (Tr. 23).

Those findings provide substantial evidence to support the ALJ's decision to discount Dr. Appollo's opinions regarding Plaintiff's social functioning as unsupported by both his own clinical findings and the treatment records as a whole.

Second, Plaintiff criticizes the ALJ's observation that, "'upon reevaluation in April 2013, [Dr. Appollo] remarked that [Plaintiff] made some gains compared to his previous evaluation . . . [but] opined [Plaintiff] still had marked problems tolerating stress and pressure associated with day-to-day work activity; and, assigned the same [Global Assessment of Functioning] score of 49.'" (Docket Entry 12 at 17 (quoting Tr. 25).)[7] According to Plaintiff,

[7] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical (continued...)

the gains Dr. Appollo observed in his second evaluation of Plaintiff did not relate to his ability to tolerate stress. (Id.) Dr. Appollo did note at the second examination that Plaintiff "made some gains," as "[h]e appear[ed] better oriented and was better able to perform simple calculations." (Tr. 381.) Although that improvement in orientation and cognition might not have directly related to Plaintiff's ability to tolerate stress, the ALJ correctly found that Dr. Appollo's assignment of the same GAF score of 49 at the second examination "contradicted" Dr. Appollo's observation of gains in Plaintiff's orientation and cognition. (Tr. 25.)[8]

Plaintiff additionally attacks the ALJ's observation that Plaintiff "'reported attending church at least three times a week[] and having a few family friends.'" (Docket Entry 12 at 15 (quoting Tr. 19).) Although Plaintiff maintains that "there is no evidence that [Plaintiff] attended church at least three times per week" (id.), Plaintiff's girlfriend told Dr. Burgess at the April 30, 2012, consultative examination that Plaintiff attended "church at

---

[7](...continued)
continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV-R"). A GAF of 41 to 50 reflects "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." DSM-IV-R 34 (bold font omitted). A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

[8] Plaintiff does not explain how the ALJ's allegedly erroneous criticism of Dr. Appollo's opinion that Plaintiff remained markedly impaired, despite gains in orientation and cognition, in his ability to tolerate work stress rendered the ALJ's analysis of Plaintiff's social functioning unsupported by substantial evidence. (See Docket Entry 12 at 17.)

least three times a week" (Tr. 349). Plaintiff's assertion that "the ALJ failed to explain how having a few family friends has any bearing on social functioning" (Docket Entry 12 at 15) also misses the mark. The ability to maintain friendships with family members clearly relates to an individual's ability to function socially. Moreover, the full context of the ALJ's discussion shows that the ALJ relied on Plaintiff's report of having a few family friends in order to contrast that report with Plaintiff's earlier statements "that he ha[d] no friends . . . [and] d[id] not socialize." (Tr. 19.)

In sum, Plaintiff has not demonstrated error with respect to the ALJ's finding of moderate limitation in social functioning that would warrant remand.

b. CPP

Respecting CPP, Plaintiff challenges the ALJ's finding of moderate limitation in two respects: the ALJ failed to (1) explain how Plaintiff's watching television or shopping with his girlfriend demonstrate[d] an ability [to] sustain concentration over the course of an 8-hour workday; and (2) properly consider Dr. Appollo's opinion that Plaintiff had marked limitation in his ability to sustain attention to perform simple, repetitive tasks. (Docket Entry 12 at 18-19.)

The ALJ evaluated Plaintiff's ability to maintain CPP as follows:

> With regard to [CPP], [Plaintiff] has moderate
> difficulties. [Plaintiff] reported having poor
> concentration and memory; and, the evidence shows his
> level of intelligence was estimated to be in the below
> average range. Yet, he is able to watch television
> daily; and shop with his girlfriend. While treatment
> records reflect [Plaintiff's] mental impairments
> interfere somewhat with his ability to sustain focused
> attention and concentration, they do not do so to the
> extent that they significantly hinder his capacity to
> perform the timely completion of tasks typically found in
> work settings.

(Tr. 19 (internal citation omitted).)

To begin, Plaintiff's challenge to the ALJ's reliance on Plaintiff's ability to watch television and shop with his girlfriend as evidence of his capacity to concentrate has some merit. An individual can watch television passively, and Plaintiff's and his girlfriend's statements neither clarified how actively he watched television, nor for how long he could do so without distraction (see Tr. 231 (containing Plaintiff's girlfriend's statement that Plaintiff's "television time is minimum some days due to intense migraines after staring at the screen for long periods of time"), 349 (documenting Plaintiff's report to Dr. Burgess that "[d]uring the day . . . he does nothing but watch television and play[] with his daughter")); as a result, such activity provides little to no support for Plaintiff's ability to sustain concentration in necessary increments to engage in substantial gainful activity, see, e.g., Hesselroth v. Colvin, Civ. No. 11–1417 (JRT/JJK), 2013 WL 1935079, at *9 (D. Minn. Mar. 27, 2013) (unpublished) ("The ALJ noted that [the claimant] watches

television without reported concentration difficulties, but failed to note that there are no indications that [the claimant] does **not** become distracted when watching television or explain how his ability to watch television would translate into the capacity to concentrate for prolonged periods of time in a work setting." (emphasis in original)).

Similarly, Plaintiff's girlfriend indicated that Plaintiff helped her grocery shop once per month for about 45 minutes. (See Tr. 230; see also Tr. 330 (reflecting Plaintiff's report to Dr. Appollo that he "[d]oes not do any shopping"), 377 (documenting Plaintiff's subsequent statement to Dr. Appollo that he shops with his girlfriend).) Plaintiff's sporadic participation in shopping, particularly when accompanied by another, able-bodied individual, does not lend much (if any) support to a conclusion that Plaintiff could maintain his concentration in a work setting. See Santos v. Astrue, No. CV 12-00694-OP, 2013 WL 816480, at *4 (C.D. Cal. Mar. 1, 2013) (unpublished) ("That [the p]laintiff can engage in leisurely or sporadic activity does not prove that he can maintain the concentration and pace sufficient to perform sustained work activity.").

However, despite those flaws, the ALJ ultimately supported the moderate limitation in CPP with substantial evidence. The ALJ gave "significant weight" to the opinions of state agency psychological consultant Dr. Ben Williams (see Tr. 25), who opined that

Plaintiff's mental symptoms caused only moderate limitation in CPP (see Tr. 100). Moreover, the ALJ specifically discussed Dr. Appollo's opinion that Plaintiff "had marked limitations and [sic] ability to sustain attention to perform simple repetitive tasks" (Tr. 24; see also Tr. 382), but accorded that opinion only "partial weight" as "contradictory of [Dr. Appollo's] observations" (Tr. 25).

Plaintiff argues that "the ALJ failed to identify the observations he thought contradicted Dr. Appollo's opinions." (Docket Entry 12 at 19.) As an initial matter, the ALJ did expressly find that Dr. Appollo's observation at the second evaluation that Plaintiff had made some gains in orientation and cognition contradicted his assignment of the same GAF score as the first examination. (See Tr. 25.) Although the ALJ did not detail any other conflicting clinical observations in the same paragraph in which he weighed Dr. Appollo's opinions (see id.), the ALJ's discussion earlier in the decision of Dr. Appollo's findings that conflict with his CPP-related opinions allows the Court to engage in meaningful judicial review of the ALJ's decision-making. See McCartney, 28 F. App'x at 279-80; Kiernan, 2013 WL 2323125, at *5. For example, the ALJ noted that, at Dr. Appollo's first examination (prior to Plaintiff's gains in orientation and cognition), Dr. Appollo found Plaintiff's recent and remote memory intact (see Tr. 22), and that Plaintiff's mental symptoms caused only moderate

deficits in the ability to sustain attention to perform simple and routine tasks (see Tr. 23). The ALJ also observed that, at Dr. Appollo's second evaluation, he noted that Plaintiff "was not easily distracted." (Id.)

Thus, because the ALJ supported his finding of moderate limitation in CPP with substantial evidence, and Plaintiff did not proffer evidence that compelled the ALJ to adopt a marked limitation, Plaintiff's attack on the ALJ's CPP finding does not require remand.[9]

In sum, Plaintiff's first issue on review fails as a matter of law.

## 2. Credibility

In Plaintiff's final assignment of error, he alleges that "the ALJ appear[ed] to deviate from the *Craig* test" in evaluating Plaintiff's credibility. (Docket Entry 12 at 20 (citing Craig, 76 F.3d at 594).)[10] In particular, Plaintiff attacks the sufficiency

---

[9] Even assuming, arguendo, that the ALJ erred in not finding a marked limitation in CPP, Plaintiff would still not prevail on his first assignment of error. To meet Listing 12.02, Plaintiff must show that he had marked limitation in at least two areas of functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.02B. As discussed above, the ALJ supported the moderate limitation in social functioning with substantial evidence, and Plaintiff has not contested the ALJ's findings in activities of daily living or decompensation. (See Docket Entry 12 at 14-19.)

[10] Applicable to ALJ decisions on or after March 28, 2016, the Social Security Administration superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("SSR 16-3p"). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and
(continued...)

of the ALJ's credibility analysis in two respects: the ALJ erroneously found that (1) the extent of Plaintiff's symptoms "[we]re not supported by medically acceptable clinical and diagnostic techniques" (id.); and (2) "there [wa]s insufficient objective medical evidence that the impairments are of such severity that they can reasonably be expected to give rise to limitations [Plaintiff] asserts" (id. at 20-21). Those arguments miss the mark.

SSR 96-7p, as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities . . . shown by medically acceptable clinical diagnostic techniques") and laboratory findings ("anatomical, physiological, or psychological phenomena . . . shown by the use of medically acceptable laboratory diagnostic techniques"). 20 C.F.R. 416.928.

---

[10] (...continued)
"offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (see Tr. 29) and, thus, this Recommendation will apply SSR 96-7p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. <u>Craig</u>, 76 F.3d at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any <u>objective medical evidence</u> of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

<u>Id.</u> (internal citations and quotation marks omitted) (emphasis added). "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded <u>solely</u> because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *6 (emphasis added). In other words, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms . . . must be considered in the context of all the evidence." (<u>Id.</u>)

Plaintiff first faults the ALJ for finding, at part two of the <u>Craig</u> test, that the extent of Plaintiff's symptoms and limitations "'[we]re not supported by medically acceptable clinical and diagnostic techniques.'" (Docket Entry 12 at 20 (quoting Tr. 21).) According to Plaintiff, "[m]edically acceptable clinical and

diagnostic techniques establish the medical signs and laboratory findings which show the existence of a medically determinable impairment . . . [and] are not related to an assessment of the severity of symptoms related to an impairment." (Id. (citing 20 C.F.R. § 416.929(b)).) That contention fails, because the Commissioner's policy and regulations require the ALJ to consider whether Plaintiff's statements regarding the extent of his symptoms harmonize with the objective medical evidence, see SSR 96-7p, 1996 WL 374186, at *6 ("When there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms, the [ALJ] must always attempt to obtain any available objective medical evidence concerning the intensity and persistence of the pain or other symptoms, and, when such evidence is obtained, must consider it in evaluating the individual's statements." (emphasis added)); see also 20 C.F.R. § 416.929(c)(1).

Plaintiff additionally challenges as erroneous the ALJ's finding that "'there [wa]s insufficient objective medical evidence that [Plaintiff's] impairments are of such severity that they can reasonably be expected to give rise to limitations [Plaintiff] asserts'" (Docket Entry 12 at 20-21), because Plaintiff's "subjective evidence of pain and other symptoms cannot be discounted based on lack of objective medical findings" (id. at

26

21). Plaintiff misstates the applicable rule. The ALJ cannot discount Plaintiff's statements concerning the extent of his symptoms <u>solely</u> on the basis of a lack of substantiating objective medical evidence. <u>See</u> SSR 96-7p, 1996 WL 374186, at *6 (emphasis added). Here, the ALJ did not discount Plaintiff's subjective complaints <u>solely</u> due to the lack of objective medical evidence to substantiate his allegations. In evaluating Plaintiff's credibility, the ALJ also considered Plaintiff's testimony and other statements regarding his daily activities, the nature of his symptoms, his medications and other treatments, and precipitating and aggravating factors, as well as the statements of Plaintiff's girlfriend regarding these matters. (<u>See</u> Tr. 21-22.) The ALJ's analysis thus complies with the Commissioner's policy and regulations.

In short, Plaintiff's second assignment of error does not entitle him to reversal or remand.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 13)

be granted, and that this action be dismissed with prejudice.

$\hspace{4cm}$ /s/ L. Patrick Auld
$\hspace{4cm}$ **L. Patrick Auld**
$\hspace{3cm}$ **United States Magistrate Judge**

February 22, 2018